**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SHARON BROCKBANK, | No. 11-35618 |
| Plaintiff - Appellant, | D.C. No. 1:09-cv-00037-EJL-CWD |
| v. | |
| U.S. BANCORP, a Delaware corporation, d/b/a U.S. Bank, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, District Judge, Presiding

Argued and Submitted November 6, 2012
Portland, Oregon

Before: RIPPLE,[**] McKEOWN, and NGUYEN, Circuit Judges.

Sharon Brockbank ("Brockbank") appeals the district court's grant of

summary judgment in favor of her former employer, U.S. Bancorp ("U.S. Bank"),

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Kenneth F. Ripple, Senior Circuit Judge for the Seventh Circuit, sitting by designation.

on her age and gender discrimination claims under the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964, respectively. We reverse in part, affirm in part, and remand.

**ADEA Claim**

The district court correctly found that there was no direct evidence of age discrimination because the alleged ageist comments relied upon by Brockbank, when viewed in context, are insufficient to directly prove age discrimination. *See Enlow v. Salem-Keizer Yellow Cab Co.*, 389 F.3d 802, 812 (9th Cir. 2004) (defining "direct evidence"). Moreover, as the district court noted, the comments "lack a temporal and contextual connection" to Brockbank's termination.

The district court, however, erred in finding that Brockbank failed to establish through circumstantial evidence a prima facie case for age discrimination. To establish a prima facie case, Brockbank must show that she was: "(1) at least forty years old, (2) performing [her] job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise 'giving rise to an inference of age discrimination.'" *Diaz v. Eagle Produce, Ltd.*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citation omitted). "An inference of discrimination can be established by showing the employer had a continuing need for the employees'

2

skills and services in that their various duties were still being performed . . . or by showing that others not in their protected class were treated more favorably." *Id.* (internal quotation marks and citations omitted).

Here, Brockbank was at least forty years old and was discharged. The district court correctly found a triable issue as to whether she was performing her job satisfactorily. However, the district court erred in finding no triable issue as to the last element—whether Brockbank was discharged under circumstances giving rise to an inference of age discrimination. Following Brockbank's termination, U.S. Bank had a continuing need for her skills and services. Her supervisor, Michael Sullivan ("Sullivan"), reassigned her accounts to the remaining trust officers, all of whom were substantially younger than Brockbank, with the exception of Rita Snodgrass, who received an insignificant portion of Brockbank's accounts. This evidence, when considered with the ageist comments made by Sullivan, is sufficient to establish a prima facie case. *See id.* at 1211 (noting that "we treat the last element of the prima facie case with 'flexibility'"); *see also Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1094 (9th Cir. 2005) (observing that the "degree of proof necessary to establish a prima facie case . . . is minimal and does not even need to rise to the level of a preponderance of the evidence").

3

Once a prima facie case is established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). U.S. Bank has met its burden by showing that Brockbank's termination was due to misuse of her corporate credit card. Specifically, U.S. Bank contends that Brockbank violated policy by charging on her corporate card expenses for a Verizon cellular phone family plan (which included lines for her children), internet service, and anti-virus software, even though she did not seek reimbursement for these charges.

The burden thus shifts back to Brockbank to establish a triable issue as to whether U.S. Bank's proffered reason was pretextual. *See Diaz*, 521 F.3d at 1212; *see also Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112-13 (9th Cir. 2011) (stating that "a plaintiff's burden to raise a triable issue of pretext is 'hardly an onerous one'" and can be met by "showing that unlawful discrimination more likely than not motivated the employer" or "by showing that the employer's proffered explanation is unworthy of credence"). Brockbank has met her burden.

First, U.S. Bank claims that it has a "zero tolerance" policy for credit card misuse, and employees who deliberately charge personal expenses on the corporate card are terminated. However, U.S. Bank's purported "zero tolerance" policy is contradicted by its own *written* Credit Card Policy, set forth in the U.S. Bank Code

4

of Ethics, which clearly contemplates employer discretion in terms of punishment. The written policy provides that misuse or "excessive personal use" of the card "may" result in discipline, including termination.

Second, Brockbank has raised a triable issue as to whether the purported "zero tolerance" policy was evenly applied. Sullivan deliberately misused his credit card on at least two occasions by substantially exceeding the authorized amounts for client gifts and alcohol purchases, but he was neither disciplined nor terminated.[1] Although U.S. Bank attempts to distinguish Sullivan's use as business-related, Brockbank also testified that she believed her phone and internet charges were proper because they were, at least in part, business-related. Brockbank was allowed to work from home, and she claims that her use of the internet and phone were for business as well as personal matters. Brockbank's contention is arguably supported by the written Credit Card Policy, which allows "non-reimbursable personal expenses incurred in the course of business activities

---

[1] The dissent contends that Brockbank has failed to link Sullivan's misuse to the Credit Card Policy and, therefore, "[w]hether Sullivan violated one of U.S. Bank's other policies is irrelevant to whether its corporate credit card policy was evenly applied." Dissent at 6. The dissent reads the evidence too narrowly. The written policy explicitly requires *all* employees "to follow U.S. Bank's guidelines regarding business-related expense and expense reimbursement procedures." Drawing all reasonable inferences in Brockbank's favor, as we must do here, the policy can be reasonably viewed as encompassing Sullivan's violations.

5

that are incidental in nature and where it is not otherwise practical for the employee to pay for those expenses separately."

The dissent relies heavily on Sullivan's prior warning to Brockbank to remove the Verizon phone charges from her corporate card. Dissent at 3. The evidence, however, cuts both ways. Sullivan testified that in 2008, U.S. Bank's policy changed such that charges for personal phones were no longer permitted. Sullivan then counseled all employees about the change, including Brockbank, because he was aware that she had the Verizon charges on her card.

Sullivan's testimony corroborates Brockbank's own belief that her Verizon charges, at least prior to the policy change, was appropriate. Indeed, no discipline was ever imposed, nor was she previously counseled regarding the charges. To the extent U.S. Bank argues that the prior policy did not allow such charges, then the fact that Sullivan knew about them but took no action calls into question whether U.S. Bank really had a "zero tolerance" policy.

Further, the timing of Sullivan's discussion with Brockbank regarding the policy change is unclear. While Sullivan at one point in his deposition claims that he counseled her in 2008, he admitted several pages later that he does not recall whether it was in 2008 or early 2009. Darlene Bills's notes of her conversation with Sullivan appear to suggest that he spoke to Brockbank about the change in

6

early 2009. Brockbank was terminated in March of 2009. The timing of the conversation is important because, viewing the evidence in the light most favorable to Brockbank, giving her two months to comply with a policy change, during which time she was undisputably trying to remove the charges, supports her claim of pretext.

Even U.S. Bank's other employees appear confused about the credit card policy. Jennifer Hogaboom, a 27-year employee, testified that a "slew" of employees mistakenly used their cards, including Judy Rudd, who charged business suits to her card, but no one else was ever terminated.[2] Hogaboom's understanding was that, so long as the employee pays for the charges and does not seek reimbursement, there would be no basis for termination. Moreover, under U.S. Bank's "zero tolerance" policy, occasional and accidental misuse is tolerated. It is unclear why Brockbank's mistaken belief that her charges comported with policy was treated differently than other employees' claims that they, too, mistakenly used the card for personal expenses.

---

[2] During her deposition, Darlene Bills could not name anyone who had been terminated for credit card misuse, although she did recall two such instances. After discovery closed, and in support of summary judgment, she provided a declaration naming three people, but given the timing, Brockbank had no chance to cross-examine her as to the full circumstances of those employees' termination.

Finally, the factual disputes regarding U.S. Bank's policy and its application should be viewed in the context of ageist comments made by Sullivan in the years leading up to Brockbank's termination. These comments include, among others, that Brockbank's hair and clothes were "not appropriate for her age," "she looked ridiculous for her age," and "she wasn't taking care of herself." Sullivan also allegedly forced an older employee, Carol Jones, to retire, and had said that he wanted to replace Jones with someone younger.

We find that Brockbank has established sufficient evidence of pretext to survive summary judgment. *See Evanston Ins. Co. v. OEA, Inc.*, 566 F.3d 915, 919 (9th Cir. 2009) ("We do not weigh the evidence or determine the truth of the matter; instead, we only determine whether there is a genuine issue for trial."). Therefore, we reverse the district court's dismissal of the ADEA claim.

**Gender Discrimination Claim**

The district court did not err in dismissing the gender discrimination claim because there was no evidence of gender-based preferential treatment.[3]

The parties shall bear their own costs.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

[3] Brockbank does not appeal the dismissal of her hostile environment claim, and her brief reference in a footnote to the unlawful retaliation claim is not sufficient to raise a challenge on appeal. *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.4 (9th Cir. 1996). In any event, that claim would still fail, as there is no evidence of gender discrimination.

*Brockbank v. U.S. Bancorp.*, 11-35618

RIPPLE, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the district court properly granted summary judgment to U.S. Bank on Ms. Brockbank's gender discrimination claim. However, because I do not agree that Ms. Brockbank has demonstrated sufficiently that U.S. Bank's proffered reason for her termination was pretextual, I would affirm the decision of the district court with respect to Ms. Brockbank's age discrimination claim.

Assuming that Ms. Brockbank has established a prima facie case of age discrimination under the familiar paradigm of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the burden shifts to U.S. Bank "to articulate a legitimate, nondiscriminatory reason for its adverse employment action." *Diaz v. Eagle Produce, Ltd.*, 521 F.3d 1201, 1207 (9th Cir. 2008). In order to meet the burden, U.S. Bank has presented evidence that it terminated Ms. Brockbank because of her misuse of her corporate credit card. U.S. Bank has explained consistently its corporate credit card policy: the corporate credit card is only for business-related expenses; U.S. Bank tolerates accidental and isolated misuse of the corporate credit card and terminates employees who deliberately use it for personal charges.[1]

---

[1] *See, e.g.*, R.59-5 at 14 (U.S. Bank Code of Ethics, "Corporate Credit Card Policy"); R.59-10 at 5.

When Darlene Bills, U.S. Bank's Human Resources Officer, was asked to "explain what U.S. Bank policy is regarding corporate credit card use,"[2] she stated that the corporate credit card policy concerns personal or non-business related use of the card. In that same deposition, Bills agreed that this policy could be characterized as one of "zero-tolerance" for deliberate misuse of the corporate credit card by making personal or non-business related charges with it.[3]

U.S. Bank presented evidence that Ms. Brockbank was terminated because she violated its corporate credit card policy. She had charged not only her entire cellular phone bill, but the bills for her children's cellular phones, as well as all of her phone accessories and telecommunications equipment. She also had charged her home cable internet bill on her corporate credit card. I agree with the majority that U.S. Bank has met its burden of articulating a legitimate, nondiscriminatory reason for Ms. Brockbank's termination.

The burden shifts back to Ms. Brockbank to demonstrate "that the reason advanced by the employer [for the adverse employment action] constitutes mere pretext for unlawful discrimination." *Diaz*, 521 F.3d at 1207. The majority takes the view that there is a triable issue as to whether U.S. Bank's corporate credit card

---

[2] R.59-10 at 5.

[3] R.59-10 at 5.

policy was unevenly applied. Any such uneven application, it reasons, would be relevant and probative evidence that the proffered reason for the discharge was pretextual.

The majority notes that Ms. Brockbank testified that she believed charging her cellular phone and home internet was permitted under the corporate credit card policy. However, her belief concerning the propriety of these charges is immaterial. The evidence demonstrates that U.S. Bank believed these sorts of charges violated its corporate credit card policy. Ms. Brockbank was warned, prior to making the charges for which she was terminated, that these charges were improper and violated U.S. Bank's corporate credit card policy. Indeed, her supervisor, Michael Sullivan, explicitly warned her in 2008 not to charge her cellular phone bill to her corporate credit card. His deposition reads, in relevant part:

> Q: Is it your testimony that approximately 15 months prior to Sharon Brockbank's termination the bank change in [sic] its policy for reimbursement for cell phone bills had changed and that prompted you to discuss it with Sharon Brockbank?
>
> Mrs. Olsson: Objection. Misstates his testimony.
>
> A: Well, if my--my testimony is that the bank policy changed on corporate cell phone use approximately 15 months prior to Sharon Brockbank's termination. Sharon was aware that the policy had changed. I counseled Sharon to make sure that she changed her credit card--her bank credit card for from [sic] charged with her Verizon bill, because that was not to occur

3

any longer and so I was concerned that Sharon was continuing to have that cell phone bill charged to her credit card. I possibly mentioned that to her in mid 2008 to make sure she got that changed."[4]

In determining whether U.S. Bank's justification for terminating Ms. Brockbank is pretextual, "it is not important whether [the reason is] *objectively false*," i.e., whether the cellular phone and internet charges arguably are business-related. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002). "Rather, courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." *Id.* (internal quotation marks omitted). Ms. Brockbank's assertions that she believed her home internet and cellular phone charges to be consistent with U.S. Bank's corporate credit card policy is insufficient to raise a triable issue as to whether U.S. Bank believed that she had violated the policy.

In any event, the evidence of record clearly shows that U.S. Bank applied its policy in an evenhanded manner and cannot support an inference that it was applied in Ms. Brockbank's case in a discriminatory manner that might constitute evidence of pretext. Before Ms. Brockbank's termination, two employees were fired for misusing their corporate cards by intentionally charging personal items. The record is silent on one such employee beyond the fact that she was discharged

---

[4]  R.59-17 at 6.

for intentionally charging personal items on her corporate credit card. Bills recounted the termination of a second employee who charged a birthday present for her daughter on her corporate credit card because she lacked the funds in her personal account to pay for the gift.[5] Both of these terminations are consistent with U.S. Bank's policy that intentional misuse of the corporate credit card results in termination; Ms. Brockbank has not produced evidence to the contrary.

The only specific example Ms. Brockbank offers of an employee who charged personal expenses to his corporate credit card and was not disciplined or terminated is Michael Sullivan, her supervisor. Yet, this example does not demonstrate that U.S. Bank failed to follow consistently its corporate credit card policy. Ms. Brockbank points to Sullivan's purchase of a golf club as a client gift with his corporate card and a corresponding lack of discipline.[6] However, the purchase of a client gift is not a personal charge and so would not, under U.S. Bank's stated policy, subject Sullivan to discipline. The same is true of Sullivan's purchase of alcohol for a business dinner. Unlike Ms. Brockbank's charges, Sullivan's charges are unambiguously business-related.

On the majority's view, even though Sullivan charged business-related,

---

[5] R.59-10 at 6.

[6] R.59-25 at 13.

rather than personal, expenses to his corporate card, he still arguably misused it. I cannot agree.

The whole of U.S. Bank's corporate credit card policy concerns the types of expenses for which the card may be used. That is, its policy is that the card is to be used solely for business-related expenses. Ms. Brockbank has produced no evidence that there is more to U.S. Bank's corporate credit card policy than this principle.

She has produced evidence referring to other U.S. Bank policies regarding spending or reimbursement[7] limits on client gifts[8] and alcohol purchases at business dinners.[9] There is evidence that Sullivan may not have observed these policies. Critically, however, Ms. Brockbank has failed to link these policies to, or show that they are part of, U.S. Bank's corporate credit card policy. A policy imposing a spending limit on a client gift can be violated by cash, check or credit card. The same is true of alcohol purchases at business dinners. Whether Sullivan violated one of U.S. Bank's other policies is irrelevant to whether its corporate

---

[7] Which one is impossible for this court to determine because Ms. Brockbank has failed to include evidence beyond the fact that one should not spend more than a certain amount on client gifts or alcohol at business meals.

[8] R.59-26 at 12.

[9] R.59-26 at 12.

6

credit card policy was evenly applied.  Ms. Brockbank bears the burden of raising a triable issue concerning uneven application of the corporate credit card policy; she has not met it.

Accordingly, because Ms. Brockbank has not met her burden under the established *McDonnell Douglas* test, I would affirm the district court's grant of summary judgment in favor of U.S. Bank on Ms. Brockbank's age discrimination claim.

I also note in passing that this case is illustrative of the "snarls and knots" that the so-called indirect method under *McDonnell Douglas* causes the courts today.  *Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012) (Wood, J. concurring).  The indirect method's burden-shifting analysis is inflexible and relies on artificial distinctions between the elements of the prima facie case and the pretext showing.  As Judge Wood noted in a special concurring opinion in *Coleman*, when courts apply the indirect method, they "engage in an allemande worthy of the 16th century, carefully executing the first four steps of the dance for the prima facie case, shifting over to the partner for the 'articulation' interlude, and then concluding with the examination of evidence of pretext." *Id.*  Judge Wood suggested that courts and litigants alike would be better served by "collaps[ing] all these tests into one" that more clearly addresses the core question of employment

discrimination cases: "that a rational jury could conclude that the employer took that adverse action on account of her protected class, not for any non-invidious reason." *Id. See also Harper v. C.R. Engl., Inc.*, 687 F.3d 297, 313-14 (7th Cir. 2012). If such an approach could be employed here (and I realize that the doctrines of stare decisis and precedent prevent us from doing so), we would simply focus on the basic question of whether Ms. Brockbank had produced "sufficient evidence showing that she was in a class protected by the statute, that she suffered the requisite adverse action . . . and that a rational jury could conclude that the employer took that adverse action on account of her protected class, not for any non-invidious reason." *Coleman*, 667 F.3d at 863. Without the "ins and outs" of the now-prevalent paradigm, our focus on the ultimate question of discrimination would be sharper and, perhaps, we all would have seen the wisdom of the district court's decision in this case. Granted, summary judgment is "not about odds, once a threshold has been crossed." *Id.* at 862. That threshold, however, is whether a rational jury could return, on the record evidence, a verdict for the plaintiff.[10] This record simply will not support such a verdict.

---

[10] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (holding that "the inquiry involved in a ruling on a motion for summary judgment . . . [is] whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented").