RIPPLE, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority that the district court properly granted summary judgment to U.S. Bank on Ms. Brock-bank’s gender discrimination claim. However, because I do not agree that Ms. Brockbank has demonstrated sufficiently that U.S. Bank’s proffered reason for her termination was pretextual, I would affirm the decision of the district court with respect to Ms. Brockbank’s age discrimination claim.
Assuming that Ms. Brockbank has established a prima facie case of age discrimination under the familiar paradigm of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the burden shifts to U.S. Bank “to articulate a legitimate, nondiscriminatory reason for its adverse employment action.” Diaz v. Eagle Produce, Ltd., 521 F.3d 1201, 1207 (9th Cir.2008). In order to meet the burden, U.S. Bank has presented evidence that it terminated Ms. Brockbank because of her misuse of her corporate credit card. U.S. Bank has explained consistently its corporate credit card policy: the corporate credit card is only for business-related expenses; U.S. Bank tolerates accidental and isolated misuse of the corporate credit card and terminates employees who deliberately use it for person *609 al charges.[1] When Darlene Bills, U.S. Bank’s Human Resources Officer, was asked to “explain what U.S. Bank policy is regarding corporate credit card use,”[2] she stated that the corporate credit card policy concerns personal or non-business related use of the card. In that same deposition, Bills agreed that this policy could be characterized as one of “zero-tolerance” for deliberate misuse of the corporate credit card by making personal or non-business related charges with it.[3]
U.S. Bank presented evidence that Ms. Brockbank was terminated because she violated its corporate credit card policy. She had charged not only her entire cellular phone bill, but the bills for her children’s cellular phones, as well as all of her phone accessories and telecommunications equipment. She also had charged her home cable internet bill on her corporate credit card. I agree with the majority that U.S. Bank has met its burden of articulating a legitimate, nondiscriminatory reason for Ms. Brockbank’s termination.
The burden shifts back to Ms. Brock-bank to demonstrate “that the reason advanced by the employer [for the adverse employment action] constitutes mere pretext for unlawful discrimination.” Diaz, 521 F.3d at 1207. The majority takes the view that there is a triable issue as to whether U.S. Bank’s corporate credit card policy was unevenly applied. Any such uneven application, it reasons, would be relevant and probative evidence that the proffered reason for the discharge was pretextual.
The majority notes that Ms. Brockbank testified that she believed charging her cellular phone and home internet was permitted under the corporate credit card policy. However, her belief concerning the propriety of these charges is immaterial. The evidence demonstrates that U.S. Bank believed these sorts of charges violated its corporate credit card policy. Ms. Brock-bank was warned, prior to making the charges for which she was terminated, that these charges were improper and violated U.S. Bank’s corporate credit card policy. Indeed, her supervisor, Michael Sullivan, explicitly warned her in 2008 not to charge her cellular phone bill to her corporate credit card. His deposition reads, in relevant part:
Q: Is it your testimony that approximately 15 months prior to Sharon Brockbank’s termination the bank change in [sic] its policy for reimbursement for cell phone bills had changed and that prompted you to discuss it with Sharon Brockbank?
Mrs. Olsson: Objection. Misstates his testimony.
A: Well, if my — my testimony is that the bank policy changed on corporate cell phone use approximately 15 months prior to Sharon Brockbank’s termination. Sharon was aware that the policy had changed. I counseled Sharon to make sure that she changed her credit card — her bank credit card for from [sic] charged with her Verizon bill, because that was not to occur any longer and so I was concerned that Sharon was continuing to have that cell phone bill charged to her credit card. I possibly mentioned that to her in mid 2008 to make sure she got that changed.” [4]
*610 In determining whether U.S. Bank’s justification for terminating Ms. Brockbank is pretextual, “it is not important whether [the reason is] objectively false,” i.e., whether the cellular phone and internet charges arguably are business-related. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir.2002). “Rather, courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless.” Id. (internal quotation marks omitted). Ms. Brockbank’s assertions that she believed her home internet and cellular phone charges to be consistent with U.S. Bank’s corporate credit card policy is insufficient to raise a triable issue as to whether U.S. Bank believed that she had violated the policy.
In any event, the evidence of record clearly shows that U.S. Bank applied its policy in an evenhanded manner and cannot support an inference that it was applied in Ms. Brockbank’s case in a discriminatory manner that might constitute evidence of pretext. Before Ms. Brock-bank’s termination, two employees were fired for misusing their corporate cards by intentionally charging personal items. The record is silent on one such employee beyond the fact that she was discharged for intentionally charging personal items on her corporate credit card. Bills recounted the termination of a second employee who charged a birthday present for her daughter on her corporate credit card because she lacked the funds in her personal account to pay for the gift.[5] Both of these terminations are consistent with U.S. Bank’s policy that intentional misuse of the corporate credit card results in termination; Ms. Brockbank has not produced evidence to the contrary.
The only specific example Ms. Brock-bank offers of an employee who charged personal expenses to his corporate credit card and was not disciplined or terminated is Michael Sullivan, her supervisor. Yet, this example does not demonstrate that U.S. Bank failed to follow consistently its corporate credit card policy. Ms. Brock-bank points to Sullivan’s purchase of a golf club as a client gift with his corporate card and a corresponding lack of discipline.[6] However, the purchase of a client gift is not a personal charge and so would not, under U.S. Bank’s stated policy, subject Sullivan to discipline. The same is true of Sullivan’s purchase of alcohol for a business dinner. Unlike Ms. Brockbank’s charges, Sullivan’s charges are unambiguously business-related.
On the majority’s view, even though Sullivan charged business-related, rather than personal, expenses to his corporate card, he still arguably misused it. I cannot agree.
The whole of U.S. Bank’s corporate credit card policy concerns the types of expenses for which the card may be used. That is, its policy is that the card is to be used solely for business-related expenses. Ms. Brockbank has produced no evidence that there is more to U.S. Bank’s corporate credit card policy than this principle.
She has produced evidence referring to other U.S. Bank policies regarding spending or reimbursement[7] limits on client gifts[8] and alcohol purchases at business *611 dinners.[9] There is evidence that Sullivan may not have observed these policies. Critically, however, Ms. Brockbank has failed to link these policies to, or show that they are part of, U.S. Bank’s corporate credit card policy. A policy imposing a spending limit on a client gift can be violated by cash, check or credit card. The same is true of alcohol purchases at business dinners. Whether Sullivan violated one of U.S. Bank’s other policies is irrelevant to whether its corporate credit card policy was evenly applied. Ms. Brockbank bears the burden of raising a triable issue concerning uneven application of the corporate credit card policy; she has not met it.
Accordingly, because Ms. Brockbank has not met her burden under the established McDonnell Douglas test, I would affirm the district court’s grant of summary judgment in favor of U.S. Bank on Ms. Brock-bank’s age discrimination claim.
I also note in passing that this case is illustrative of the “snarls and knots” that the so-called indirect method under McDonnell Douglas causes the courts today. Coleman v. Donahoe, 667 F.3d 835, 863 (7th Cir.2012) (Wood, J. concurring). The indirect method’s burden-shifting analysis is inflexible and relies on artificial distinctions between the elements of the prima facie case and the pretext showing. As Judge Wood noted in a special concurring opinion in Coleman, when courts apply the indirect method, they “engage in an allemande worthy of the 16th century, carefully executing the first four steps of the dance for the prima facie case, shifting over to the partner for the ‘articulation’ interlude, and then concluding with the examination of evidence of pretext. Id. Judge Wood suggested that courts and litigants alike would be better served by “collaps[ing] all these tests into one” that more clearly addresses the core question of employment discrimination cases: “that a rational jury could conclude that the employer took that adverse action on account of her protected class, not for any non-invidious reason.” Id. See also Harper v. C.R. Engl., Inc., 687 F.3d 297, 313-14 (7th Cir.2012). If such an approach could be employed here (and I realize that the doctrines of stare decisis and precedent prevent us from doing so), we would simply focus on the basic question of whether Ms. Brockbank had produced “sufficient evidence showing that she was in a class protected by the statute, that she suffered the requisite adverse action ... and that a rational jury could conclude that the employer took that adverse action on account of her protected class, not for any non-invidious reason.” Coleman, 667 F.3d at 863. Without the “ins and outs” of the now-prevalent paradigm, our focus on the ultimate question of discrimination would be sharper and, perhaps, we all would have seen the wisdom of the district court’s decision in this case. Granted, summary judgment is “not about odds, once a threshold has been crossed.” Id. at 862. That threshold, however, is whether a rational jury could return, on the record evidence, a verdict for the plaintiff.[10] This record simply will not support such a verdict.

. See, e.g., R.59-5 at 14 (U.S. Bank Code of Ethics, "Corporate Credit Card Policy”); R.59-10 at 5.

. R.59-10 at 5.

. R.59-10 at 5.

4. R.59-17 at 6.

. R.59-10 at 6.

. R.59-25 at 13.

. Which one is impossible for this court to determine because Ms. Brockbank has failed to include evidence beyond the fact that one should not spend more than a certain amount on client gifts or alcohol at business meals.

.R.59-26 at 12.

. R.59-26 at 12.

. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (holding that "the inquiry involved in a ruling on a motion for summary judgment ... [is] whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented”).