**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHARLES T. MERRICK, *Plaintiff-Appellant*, | No. 14-56853 |
| v. | D.C. No. 3:13-cv-01568-LAB-MDD |
| HILTON WORLDWIDE, INC., a Delaware Corporation; HILTON HOTELS CORPORATION, a Delaware corporation; CHH TORREY PINES TENANT CORP., a Delaware Corporation; DOES, 1–10, *Defendants-Appellees.* | OPINION |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted November 9, 2016
Pasadena, California

Filed August 16, 2017

Before: Marsha S. Berzon and Jacqueline H. Nguyen,
Circuit Judges, and Jack Zouhary,* District Judge.

Opinion by Judge Zouhary

---

* The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

## SUMMARY[**]

### Age Discrimination

The panel affirmed the district court's summary judgment in favor of Hilton Worldwide, Inc., and CHH Torrey Pines Tenant Corp. on a former Hilton employee's age discrimination claims.

The California Fair Employment and Housing Act ("FEHA") prohibits employers from discharging or dismissing employees over the age of forty based on their age. Cal. Gov't Code §§ 12926(b), 12940(a). Plaintiff Charles Merrick was 60 years old in July 2012, when he was terminated from his position as Director of Property Operations at a Hilton hotel as part of a reduction-in-workforce ("RIF").

The panel applied the three-part *McDonnell Douglass* burden-shifting test to analyze Merrick's age discrimination disparate treatment claims under FEHA.

First, the panel held that Merrick satisfied the elements for establishing a prima facie case of discrimination. The panel noted that the district court erred in requiring Merrick to show that he was replaced by a younger employee. The panel held that employees terminated during a RIF, instead of showing proof of replacement, may instead show through evidence that discharge occurred under circumstances giving rise to an inference of age discrimination. The panel

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

concluded that Hilton acknowledged Merrick's duties were outsourced or assumed by other employees, and, accordingly, Merrick satisfied the elements for establishing a prima facie case of discrimination.

Second, the panel held that the burden shifted to Hilton to produce admissible evidence showing that it terminated Merrick for a legitimate, nondiscriminatory reason. The panel concluded that Hilton produced evidence that it terminated Merrick for legitimate, nondiscriminatory reasons.

Finally, the panel held that the burden shifted back to Merrick to produce sufficient evidence to allow a jury to conclude that Hilton's proffered reasons were pretexts, and that age was a substantial motivating factor in his termination. The panel held that considering the context of the case – the lost profits during the economic downturn, a series of layoffs, the overall age of the workforce, the fact that Merrick survived previous RIFS, and the business reasons for selecting his position for elimination - Merrick did not present sufficient evidence to infer that Hilton's actual motive was discriminatory.

The panel held that Merrick's other claims were derivative of his FEHA age discrimination claim, and necessarily failed along with that claim.

## COUNSEL

James C. Mitchell (argued), The Gilleon Law Firm, San Diego, California, for Plaintiff-Appellant.

Sherry Swieca (argued), Jackson Lewis P.C., Los Angeles, California; Kelly D. Gemelli, Jackson Lewis P.C., San Diego, California; for Defendants-Appellees.

## OPINION

ZOUHARY, District Judge:

Charles Merrick appeals the district court's order granting summary judgment in favor of Hilton Worldwide and CHH Torrey Pines Tenant Corporation (collectively, "Hilton") on his age discrimination claims. We affirm.

## BACKGROUND

### Merrick's Tenure at the Hotel

Appellant Charles Merrick was sixty years old in July 2012, when he was terminated from his position as Director of Property Operations at the Hilton La Jolla Torrey Pines Hotel ("the Hotel") as part of a reduction-in-workforce ("RIF"). Merrick began his career in hotel operations as a maintenance mechanic for Sheraton Hotels in Chicago. He rose through the ranks to become Director of Engineering. In 1993, Sheraton transferred Merrick to the Sheraton Grande Torrey Pines, La Jolla. When Hilton acquired the Hotel five years later, it kept Merrick on, first as Director of Hotel

Operations and then as Director of Property Operations. By 2012, Merrick had logged nineteen years at the Hotel.

As Director of Property Operations, Merrick was responsible for supervising maintenance, rehabilitation, and capital improvement projects for the Hotel. In addition to overseeing run-of-the-mill heating, ventilation, air conditioning, plumbing, and other equipment repairs, Merrick also oversaw fifty major building renovations during his tenure. However, his role on these renovation projects shifted—though the parties dispute how much—in 2009, when Hilton Worldwide instructed Remington, a subsidiary of the Hotel's joint owner, to assume primary responsibility for capital improvement projects. Merrick acknowledges that Remington took over several aspects of project management, but maintains that he continued to play a substantial role in on-site management of renovation projects until his termination. The transition apparently was not without some tension, and Merrick reportedly complained about Remington's personnel and overall performance.

Merrick directly supervised seven to twelve people in his department, including Assistant Director of Property Operations Michael Kohl. Merrick's performance evaluations were consistently positive. At the time of his termination, Merrick earned a salary of $110,325 per year, plus an annual bonus of $20,000, making him the highest paid Hotel employee after General Manager Patrick Duffy. At sixty, Merrick was also the oldest management-level employee after Duffy, who was sixty-one at the time of the RIF.

**The Reduction-in-Workforce**

Due to declining revenues, the Hotel underwent a series of RIFs beginning in 2008. It laid off eight employees in 2008, three employees (the entire pastry department) in 2009, and six employees in 2011. The Hotel also left a number of vacant positions unfilled during that time period.

In May 2012, Hilton Worldwide ordered a number of properties, including the Hotel, to reduce payroll expenses by seven to ten percent by August 2012. The mandate was outlined in a document titled "Management Reduction in Workforce (RIF) Timeline – May 2012" and provided that "[r]eduction decisions should be heavily weighted at the senior level." The mandate instructed the General Manager and Human Resources Director of each individual hotel—in collaboration with Hilton Worldwide staff in various disciplines, such as engineering, food and beverage, human resources, revenue management, and sales—to recommend a position or positions to eliminate, based on employee performance, corrective action, and tenure.

The following month, Hilton Worldwide issued revised guidelines for implementing the RIF. These guidelines clarified the termination criteria, providing that in "identifying the individual team members to be laid off . . . [t]he primary consideration should be a team member's overall performance," followed by "any disciplinary action a team member has received." If a decision could not be made based on those factors, the guidelines instructed decisionmakers to consider employees' length of service with the company. Both these revised guidelines and Hilton's general human resources guidelines for RIFs allowed

qualified employees to apply for transfer to open positions within the Hilton organization following layoffs.

In response to the 2012 RIF mandate, Hotel General Manager Patrick Duffy met with Director of Human Resources Michelle Lucey and Director of Finance Marjorie Maehler to discuss how to achieve the required payroll cuts. As a starting point for their deliberations, they prepared and reviewed a spreadsheet listing all twenty-nine Hotel managers. The spreadsheet included each employee's department, job title, start date, years of service, and salary. The spreadsheet did not include the employees' ages, but more than half of them were over forty. For business reasons, the decisionmakers preferred to avoid eliminating positions (1) with direct guest contact, (2) with significant team member impact (*e.g.*, supervisors of large departments), and (3) that directly generated additional revenue for the Hotel. In light of the other recent layoffs, they also preferred to achieve the required payroll cut by eliminating a single position, if possible.

Consistent with the RIF guidelines, Duffy, Lucey, and Maehler determined that all twenty-nine managers met performance standards, and none had been subject to disciplinary action. Though the decisionmakers did not attest to discussing each employee's tenure, the spreadsheet they reviewed included the years of service for each employee. Without an obvious candidate for termination based on performance and disciplinary action, the decisionmakers proceeded to consider the business case for retaining or eliminating each management-level position. For example, Maehler specifically recalled considering whether to eliminate the executive chef, sous chef, and food outlet manager positions. However, all of these positions were

considered revenue generators because they had a direct impact on increasing sales.

The decisionmakers also considered how previous RIFs, attrition, and unfilled positions affected each department. For example, they hesitated to terminate the executive chef—at a salary of $90,000—because the Hotel had been forced to operate without an executive chef for several years after an earlier round of lay-offs, and the position had only recently been filled. Likewise, the catering, banquet, and sales and marketing departments were already operating with a reduced staff. The decisionmakers also concluded that the Hotel could not operate without a General Manager, the only employee besides Merrick whose single salary ($192,102) would satisfy the payroll reduction target. Selecting any other position would require more than one layoff to achieve the seven percent target.

**The RIF Recommendation**

Ultimately, Duffy, Lucey, and Maehler decided to recommend Merrick's position, Director of Property Operations, for elimination. They identified several reasons for their decision. First, unlike the food and beverage or sales departments, Merrick's face-to-face interaction with guests was limited, so they perceived him as having relatively little "guest impact," and his work did not directly generate additional revenue for the Hotel. Second, the managers believed Merrick had become less "hands on" in recent years, and few employees directly reported to him. They also believed much of Merrick's responsibility for capital projects had already been outsourced to Remington. Finally, Merrick's projected salary and bonus of $132,049 satisfied the target payroll reduction of $131,614, or seven percent of

the Hotel's management payroll. Thus, the managers believed eliminating Merrick's position would allow them to comply with the RIF by terminating a single employee.

Some higher-ups at Hilton Worldwide questioned the RIF recommendation, particularly in light of an upcoming guest room renovation project, which they anticipated would require significant attention from local Hotel staff. Ultimately, however, Hilton's corporate executives approved the Hotel's recommendation that Merrick be terminated.

Duffy and Lucey then informed Merrick that his position was being eliminated. Merrick's termination letter advised him that he was eligible to pursue internal job opportunities, and the Human Resources Department provided him a list of open positions within the company. Merrick asked to stay on at the Hotel as Assistant Director of Property Operations, in place of Kohl, but the Hotel refused.

Following the RIF, Kohl assumed most—if not all—of Merrick's duties. To compensate Kohl for his increased responsibilities, the Hotel managers recommended that Kohl receive a raise. The Hotel also hired an hourly mechanic, at $15 to $16 per hour, to cover some of Kohl's former duties.

**The Lawsuit**

Merrick originally raised six claims against Hilton: wrongful termination based on age, in violation of the California Fair Employment and Housing Act ("FEHA"); age discrimination in violation of public policy; failure to prevent age discrimination; wrongful termination due to physical disability; and two counts of failure to prevent disability discrimination. The district court granted summary judgment

on all six claims. Merrick appeals only the age discrimination claims.

## LEGAL STANDARD

We review *de novo* a district court order granting summary judgment, including "whether the district court correctly applied the relevant substantive law." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). Summary judgment is appropriate if—construing the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor—there is no genuine dispute of material fact, such that judgment is appropriate as a matter of law. Fed. R. Civ. P. 56. A genuine dispute of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

The California FEHA prohibits employers from discharging or dismissing employees over the age of forty based on their age. CAL. GOV'T CODE § 12926(b); 12940(a). Because state and federal employment discrimination laws are similar, California courts apply the *McDonnell Douglas* burden-shifting framework to analyze disparate treatment claims under FEHA. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Under the three-part *McDonnell Douglas* test, the plaintiff first bears the burden of establishing a prima facie case, which raises a presumption of discrimination. *Id.* at 355. The burden then shifts to the employer to rebut this presumption

by producing admissible evidence sufficient to show that "its action was taken for a legitimate, nondiscriminatory reason." *Id.* If the employer sustains its burden, the presumption established in the first step disappears, and the plaintiff must raise a triable issue suggesting that the employer's proffered reason is mere pretext for unlawful discrimination, or offer other evidence of discriminatory motive. *Id.* at 356. Despite this intermediate shifting of the evidentiary burdens, the ultimate burden of persuasion "remains with the plaintiff." *Id.*

**The Prima Facie Case**

To establish a prima facie case of age discrimination, Merrick must show he was "(1) at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise 'giving rise to an inference of discrimination.'" *Schechner v. KPIX-TV*, 686 F.3d 1018, 1023 (9th Cir. 2012) (quoting *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008)).

The first three elements are undisputed: Merrick was sixty years old when he was permanently laid off, and his termination was not based on his performance. Merrick argues the fourth element is also satisfied because he was replaced by Kohl, who was fifteen years younger. Hilton contests this characterization and contends that while Kohl took over some of Merrick's duties, others were outsourced to Remington or handled by Maehler. Hilton also notes that Kohl was not named Director of Property Operations following Merrick's termination and instead maintained his Assistant Director title. Framed this way, the district court

concluded Kohl did not "replace" Merrick, and held that Merrick therefore failed to establish a prima facie case of age discrimination.

But Merrick was not required to show that he was "replaced" by Kohl. This Court has consistently recognized that employees terminated during a RIF often are not replaced. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir. 1994). Instead of showing proof of replacement, a plaintiff may establish a prima facie case of discrimination by showing "through circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination." *Id.* (quoting *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir. 1990)). Such an inference may be established by demonstrating that an "employer had a continuing need for [the plaintiff's] skills and services in that [his] various duties were still being performed." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000) (quoting *Wallis*, 26 F.3d at 891). Hilton does not contend any of Merrick's duties were eliminated following the RIF or that it no longer had a need for his skills; in fact, it acknowledges Merrick's duties were outsourced or assumed by other employees. Accordingly, Merrick has satisfied the elements for establishing a prima facie case of discrimination.

## The Legitimate, Nondiscriminatory Reason

The burden now shifts to Hilton to produce admissible evidence showing that it terminated Merrick for a legitimate, nondiscriminatory reason. "[D]ownsizing alone is not necessarily a sufficient explanation, under the FEHA, for the consequent dismissal of an age-protected worker." *Guz*, 24 Cal. 4th at 358. When an employer discharges an

employee during a RIF, it must give an individualized reason for laying off that employee. *Diaz*, 521 F.3d at 1211–12. However, an employer's "true reasons need not necessarily have been wise or correct," as long as they are not discriminatory. *Guz*, 24 Cal. 4th at 358. "While the objective soundness of an employer's proffered reasons supports their credibility . . . , the ultimate issue is simply whether the employer acted with a *motive to discriminate illegally*." *Id.* (emphasis in original).

Hilton provided evidence, including certain facts to which Merrick stipulated, that it terminated Merrick for the following individualized, nondiscriminatory reasons:

- Eliminating Merrick's salary (the second highest at the Hotel) would allow them to comply with the RIF criteria by laying off only a single employee;

- Property operations was not considered a high guest contact or revenue generating department;

- Other departments—some with higher guest contact and greater revenue generating capabilities—were already understaffed due to previous layoffs and unfilled positions.

Because Hilton produced evidence showing that it acted for a legitimate, nondiscriminatory reason, the burden shifts back to Merrick to show Hilton's articulated reasons were pretextual.

**Pretext**

Merrick "must now introduce evidence sufficient to raise a genuine issue of material fact as to whether the reasons [Hilton] articulated are pretexts for age discrimination." *Coleman*, 232 F.3d at 1282. He may rely on the same evidence used to establish his prima facie case, or he may introduce additional evidence. *Id.* However, he "must do more than establish a prima facie case and deny the credibility of [Hilton's] witnesses." *Id.* (quoting *Schuler v. Chronicle Broad. Co., Inc.*, 793 F.2d 1010, 1011 (9th Cir. 1986)). The evidence must be "sufficiently probative" to allow a reasonable jury to conclude either (1) Hilton's reasons for the termination were false or (2) the true reason for the termination was discriminatory. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir. 1996). In short, Merrick must produce sufficient evidence to allow a jury to conclude that age was a "substantial motivating factor" in his termination. *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 232 (2013) ("[P]roof that discrimination was a *substantial* factor in an employment decision triggers the deterrent purpose of the FEHA and thus exposes the employer to liability, even if other factors would have led the employer to make the same decision at the time.") (emphasis in original).

In the Statement of Undisputed Material Facts, Merrick acceded to Hilton's account of the decisionmakers' deliberations and motives regarding the RIF. So, as in *Guz*, Merrick "has largely conceded the truth, if not the wisdom, of [Hilton]'s proffered reasons." *Guz*, 24 Cal. 4th at 357. Nevertheless, Merrick identifies three bases, all circumstantial, for inferring that Hilton's proffered reasons were mere pretext for age discrimination: (1) Hilton refused to consider him for transfer to an alternative position within

the organization; (2) Hilton deliberately mischaracterized both his responsibilities and performance and his department's impact on guests; and (3) Hilton failed to comply with its own corporate guidelines in conducting the RIF.

*1. Failure to transfer.* Merrick suggests Hilton's failure to transfer him to the Assistant Director position violated policy and reveals Hilton's discriminatory motive in terminating him. But Hilton's general guidelines for RIFs merely provide that qualified employees may apply for transfer to *available* positions. The position of Assistant Director was not "available" because it was held by Kohl. Further, Merrick acknowledged in his deposition that Hilton gave him a list of open positions when he was terminated. Thus, Merrick's first argument is not supported by the record and fails to create a triable question of pretext.

*2. Hilton's misrepresentations.* Merrick contends Hilton mischaracterized several issues that ultimately influenced the RIF recommendation by Duffy, Lucey, and Maehler. Specifically, he claims the managers: overstated Remington's involvement in capital projects and minimized his own responsibilities; unfairly criticized his job performance—describing his attitude as "negative" and his relationship with management as "deteriorating"—while not subjecting other employees to the same level of scrutiny; and failed to consider customer survey data regarding the importance of property operations to guest experience.

Merrick's contention that Hilton misstated the role of Remington in capital improvement projects is not supported by the record. Merrick acknowledged that Hilton Worldwide expected Remington to take over primary responsibility for

managing capital projects as early as 2009. Viewing the facts in the light most favorable to Merrick, we assume he continued to play a significant role in renovations between 2009 and 2012. Even so, Hilton reasonably could have believed that Remington would assume those duties—in keeping with its prior expectations—if it eliminated the Director of Property Operations position during the RIF. (Though as it turned out, Kohl did play some substantial role in capital projects, as Merrick had before him.)

Merrick's claim regarding the decisionmakers' evaluation of his performance is no more persuasive. Hilton presented testimony that Duffy, Lucey, and Maehler *did* consider the performance and disciplinary history of all twenty-nine managers, and Merrick points to no evidence to the contrary. Moreover, the managers noted Merrick's performance evaluations were positive, and neither party argues Merrick was terminated based on performance.

Finally, the decisionmakers' choice to rely on their own perceptions about guest interaction and impact, rather than on customer survey data, reflects a business judgment. The decisionmakers chose to give priority to retaining positions that involved face-to-face interaction with guests over those positions that impacted guests in other ways. The wisdom of that judgment is not subject to review by this Court, nor does it suggest Hilton's stated reasons for terminating Merrick were pretextual. *See Coleman*, 232 F.3d at 1285 ("That Quaker made unwise business judgments or that it used a faulty evaluation system does not support the inference that Quaker discriminated on the basis of age."); *Guz*, 24 Cal. 4th at 358 ("[I]f nondiscriminatory, Bechtel's true reasons need not necessarily have been wise or correct. While the objective soundness of an employer's proffered reasons

supports their credibility . . . the ultimate issue is simply whether the employer acted with *a motive to discriminate illegally*.") (citations omitted).

*3. Deviation from RIF guidelines.* Merrick claims Duffy, Lucey, and Maehler deviated from Hilton's RIF guidelines by including Maehler in the decision-making process; by failing to consider length of service as a primary factor in their deliberations; and by failing to achieve the targeted seven to ten percent reduction in payroll expenses. "A plaintiff may . . . raise a triable issue of pretext through evidence that an employer's deviation from established policy or practice worked to her disadvantage." *Earl*, 658 F.3d at 1117 (citing *Diaz*, 521 F.3d at 1214). But such a deviation must be considered in context and may not always be sufficient to infer a discriminatory motive. *See Guz*, 24 Cal. 4th at 365 ("[A]ny failure by Bechtel to conduct the reorganization with full formality . . . [does not] strongly suggest[ ] that the reasons Bechtel gave for releasing Guz are false."); *Diaz*, 521 F.3d at 1214 (holding that while deviation from a company policy requiring consideration of length of employment in making termination decisions can "undermine[ ] the credibility of the proffered explanations for the layoffs," the employer's deviation in that case was insufficient to create a genuine issue of fact concerning pretext in light of all the evidence).

Regarding Maehler's participation in the RIF discussions, Hilton's guidelines provided that the General Manager and Director of Human Resources were responsible for making RIF recommendations. The guidelines did not prohibit other members of Hotel management from participating. However, drawing all reasonable inferences in Merrick's favor, we assume the decision-making team was supposed to be limited

to the two individuals identified in the guidelines. Merrick suggests Maehler's participation in the RIF decision disadvantaged him because it removed her from consideration for termination in his place.

Merrick cites no evidence to support this conclusory assertion, and the facts in the record suggest otherwise. Both Maehler and Lucey's positions were included on the spreadsheet that formed the basis for the managers' deliberations, and Maehler and Duffy attested every management-level position was considered for elimination. Moreover, Maehler's lower salary of $99,301 would have required eliminating more than one position to achieve the seven percent target, and the finance department, though not involved in direct guest contact, was already understaffed. Maehler therefore was an unlikely candidate for termination in light of the business considerations actually weighed by the managers. Thus, Maehler's inclusion in the RIF decision-making team, even if a deviation from the RIF guidelines, does not constitute "specific" and "substantial" evidence of a discriminatory motive.

As for whether the decisionmakers considered length of service, as required by both the May 2012 RIF mandate and the revised guidelines, Maehler's deposition testimony is the only record evidence on this issue. She attested that each employee's tenure was listed on the spreadsheet the managers consulted, but she could not recall whether they explicitly discussed it. Viewing the evidence in the light most favorable to Merrick, then, the managers either failed to consider length of service or, at a minimum, failed to treat it as a primary factor in their decision making. This policy deviation may have worked to Merrick's disadvantage, as he was the second longest tenured Hotel employee at the time of

the RIF. *See Diaz*, 521 F.3d at 1214 (describing length of employment as the fact "that weigh[s] most heavily in favor of retaining older workers").

Nevertheless, this discrepancy does not undermine the credibility of Hilton's stated (nondiscriminatory) reasons for terminating Merrick. The length of Merrick's tenure at Hilton does not change the fact that the managers did not consider property operations to be a high guest impact or revenue generating department. Nor does it controvert their stated goal of complying with the RIF mandate by eliminating a single position.

Merrick's final argument regarding pretext notes that Hilton has repeatedly and consistently asserted that its managers aimed to comply with the RIF mandate—reducing payroll expenses by seven to ten percent—by eliminating a single position. Yet, as Hilton concedes, it failed to accomplish its payroll reduction goal. Merrick's projected salary and bonus totaled $132,049, just surpassing the seven percent target. But factoring in Kohl's proposed raise (assuming he received it) and the cost of hiring an hourly mechanic to take over some of Kohl's duties, the total cost savings amounted to only $91,350, or five percent of the Hotel's management payroll.

Hilton's failure to achieve the required payroll reduction could call into question the credibility of one of its proffered reasons for Merrick's termination. After all, evidence undermining an employer's stated reason for an adverse employment action "may 'considerably assist' a circumstantial case of discrimination, because it suggests the employer had cause to hide its true reasons." *Guz*, 24 Cal. 4th at 361 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S.

502, 517 (1993)).  Yet such evidence may still be insufficient to create a triable issue for a jury, for "there must be evidence supporting a rational inference that *intentional discrimination, on grounds prohibited by the statute, was the true cause* of the employer's actions."  *Id.* (emphasis in original); *see also Diaz*, 521 F.3d at 1214 (holding employer's deviation from company termination policy undermined employer's stated nondiscriminatory reasons for terminating employees but was insufficient to create a genuine issue of fact concerning pretext in light of the strength of the evidence supporting those proffered reasons).  Here, the deviations from the RIF mandate do not create such an inference.

In short, context is key when a plaintiff alleges age discrimination based on circumstantial evidence.  Considering the context of this case—the lost profits during the economic downturn, a series of layoffs over several years, the overall age of the workforce, the fact that Merrick survived previous RIFs despite having then also been a member of a protected class, and the business reasons for selecting his position for elimination—"the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory."  *Id.*

### Derivative Claims

Merrick's other claims are derivative of his FEHA age discrimination claim, and so necessarily fail along with that claim.  A common law claim for wrongful termination in violation of public policy requires a showing that there has been a violation of a fundamental public policy embodied in statute.  *See Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1256 (1994); *Reno v. Baird*, 18 Cal. 4th 640, 664 (1998).

Likewise, "employers are not liable for failing to take necessary steps to prevent discrimination, 'except where the [discriminatory] actions took place and were not prevented.'" *Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 748 (9th Cir. 2011) (alteration in original) (quoting *Trujillo v. North Cty. Transit Dist.*, 63 Cal. App. 4th 280, 289 (1998).

## CONCLUSION

Because Merrick fails to raise a triable question of fact as to whether Hilton discriminated against him on the basis of age, the district court's order granting summary judgment in favor of Hilton is **AFFIRMED**.