NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ESTATE OF THELMA STERN and THELMA STERN, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> TUSCAN RETREAT, INC.; et al., <br><br> Defendants-Appellees. | No. 16-55926 <br><br> D.C. No. 2:14-cv-05155-DSF-AS <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Submitted November 6, 2017[**]
Pasadena, California

Before: TASHIMA and BERZON, Circuit Judges, and PAYNE,[***] District Judge.

**1.** This action involves claims under California and federal law brought by

Thelma Stern (posthumously) and her estate for alleged mistreatment Ms. Stern

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Robert E. Payne, United States District Judge for the Eastern District of Virginia, sitting by designation.

experienced while she was a resident at an assisted living facility. The district court disposed of these claims by granting defendants' motions under Federal Rules of Civil Procedure 12(b)(6) and 56. We affirm.

First, pursuant to Rule 12(b)(6), the district court dismissed with prejudice plaintiffs' state Elder Abuse Act claims contained in the Second Amended Complaint as to all defendants for failure to plead the requisite elements. Second, also pursuant to Rule 12(b)(6), the district court likewise dismissed with prejudice plaintiffs' state Unruh Act claims contained in the Third Amended Complaint as to all defendants. Third, the district court rejected plaintiffs' motions under Rule 60 to reinstate the state Elder Abuse Act and Unruh Act claims. Finally, the district court granted defendants Stephen Weisbarth and Tuscan Retreat, Inc.'s motion for summary judgment as to plaintiffs' federal Rehabilitation Act, state constructive eviction, and state trespass claims on timeliness grounds. The district court also refused to allow plaintiffs to add a federal Fair Housing Act (FHA) claim by way of their brief in opposition to summary judgment.[1]

Plaintiffs appeal these decisions. On appeal, plaintiffs additionally

---

[1] The Rule 12(b)(6) and Rule 60 opinions also involved claims against other defendants, but those are not at issue. Most of these defendants have been voluntarily dismissed. Plaintiffs do not argue on appeal that the rulings in favor of other defendants were improper, so we need not address them. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994).

requested, by post-briefing letters pursuant to Federal Rule of Appellate Procedure 28(j), that we treat their Unruh Act claims as claims for nominal damages under Title III of the federal Americans with Disabilities Act (ADA).[2]

**2.** We first consider the district court's grant of summary judgment as to plaintiffs' Rehabilitation Act, constructive eviction, and trespass claims on the ground that the statutes of limitations had run. On *de novo* review, we conclude that the applicable limitations periods expired before this action was filed and that there is no genuine dispute of material fact as to tolling. *See Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1145 (9th Cir. 2017).

We need not conclusively determine the statute of limitations period applicable to the Rehabilitation Act, but the longest option is California's three-year provision for "[a]n action upon a liability created by statute." *See* Cal. Civ. Proc. Code §§ 335.1, 338(a); *Sharkey v. O'Neal*, 778 F.3d 767, 770–73 (9th Cir. 2015). So we use it. The limitations period applicable to wrongful eviction claims is somewhat unclear because there is little case law on point and such claims may sound in tort or contract. *See Ginsberg v. Gamson*, 141 Cal. Rptr. 3d 62, 80–85 (Ct. App. 2012). As the parties agree, however, at most, the four-year period for "[a]n action upon any contract" controls. *See* Cal. Civ. Proc. Code § 337(1). Trespass claims must be filed within three years. Cal. Civ. Proc. Code § 338(b).

---

[2] Plaintiffs' other Rule 28(j) letters do not affect the analysis herein.

Here, it is undisputed that Ms. Stern moved out of her assisted living facility on April 30, 2010. The parties do not contend that any claims accrued after that date. This action was filed on July 2, 2014. Accordingly, plaintiffs' Rehabilitation Act, constructive eviction, and trespass claims are, on the face of the pleadings, time-barred.

To avoid dismissal on that ground, plaintiffs assert that the statutes of limitations were tolled. First, they rely on California Code of Civil Procedure Section 352(a), which tolls a claim if a plaintiff "lack[ed] the legal capacity to make decisions" when the claim accrued. *See* Cal. Civ. Proc. Code § 352(a). Second, plaintiffs aver that Ms. Stern's filing of a state suit on March 14, 2013 on similar grounds tolled their claims.

To invoke tolling under Section 352(a), plaintiffs must show that Ms. Stern was "incapable of caring for [her] property or transacting business or understanding the nature or effects of [her] acts." *See Alcott Rehab. Hosp. v. Superior Court*, 112 Cal. Rptr. 2d 807, 812 (Ct. App. 2001) (citations omitted). "[T]he basic question . . . is whether [Ms. Stern was] sufficiently aware of the nature or effects of h[er] acts to be able to comprehend such business transactions as the hiring of an attorney and the instigation of a legal action." *See Hsu v. Mt. Zion Hosp.*, 66 Cal. Rptr. 659, 666 (Ct. App. 1968). Plaintiffs erroneously assert that the key inquiry "is whether the person can take care of her property, or

business, *by herself.*" But, plaintiffs offer as support only *Alcott* and *Tzolov v. International Jet Leasing, Inc.*, which did not so hold. *See Alcott*, 112 Cal. Rptr. 2d at 812; *Tzolov v. Int'l Jet Leasing, Inc.*, 283 Cal. Rptr. 314, 315–18 (Ct. App. 1991). No other authority validates that position either.[3]

Under Section 352(a), even "a person who is adjudged mentally ill [for commitment purposes] may nevertheless be capable of transacting business and carrying out h[er] affairs, either during occasional lucid intervals or throughout h[er] hospitalization." *See Hsu*, 66 Cal. Rptr. at 665. Moreover, incapacity must exist at the time the claims accrue, and tolling lasts only until the plaintiff regains capacity. Cal. Civ. Proc. Code § 352(a); *Feeley v. S. Pac. Transp. Co.*, 285 Cal. Rptr. 666, 667 (Ct. App. 1991); *Larsson v. Cedars of Lebanon Hosp.*, 218 P.2d 604, 606 (Cal. Dist. Ct. App. 1950).

Plaintiffs rely on three sources of evidence to support the application of tolling here: (1) Ms. Stern's 2007 medical records; (2) Ms. Stern's deposition in the state court case she filed in 2013; and (3) a portion of the declaration of Kenneth Stern, Ms. Stern's attorney and son. As the district court correctly held,

---

[3] Plaintiffs also claim that there is a legal difference between the current Section 352(a), which employs the phrase "legal capacity," and the version in effect when the claims here accrued, which used the term "insane." *See* Cal. Civ. Proc. Code § 352, *amended by* 2014 Cal. Stat. c. 144, § 4. There is none. This amendment simply replaced "offensive and outdated terms." Concurrence in Senate Amendments: A.B. 1847, 2013–2014 Assemb., Reg. Sess. (Cal. 2014).

none raises a triable issue.[4]

Before evaluating these sources of evidence, however, the Court notes, as did the district court, that, in 2013, Ms. Stern filed, *in her own name*, a state court action that involved some of the state claims asserted in this case. This filing constitutes evidence that Ms. Stern possessed capacity at that time, as it shows her ability "to comprehend . . . the hiring of an attorney and the instigation of a legal action." *See Hsu*, 66 Cal. Rptr. at 666. That conclusion is underscored by the fact that California law *requires* "a person who lacks legal capacity to make decisions" to appear in court by guardian, conservator, or guardian *ad litem*. *See* Cal. Civ. Proc. Code § 372(a)(1).[5] Only a person who has capacity may proceed in her own name.

Ms. Stern's 2007 medical records do not defeat summary judgment. They show that Ms. Stern had an Alzheimer's diagnosis, but this diagnosis alone does

---

[4] The district court rejected the declaration because Mr. Stern is not a medical expert. The parties dispute whether this basis for rejecting the declaration is valid. They also contest the admissibility of the medical records. Affording plaintiffs the benefit of the doubt, we consider these documents. Plaintiffs have waived review of the other evidentiary decisions below, however, because they challenge them in their opening brief with only a single conclusory sentence. *See Greenwood*, 28 F.3d at 977.

[5] Before 2015, Section 372(a)(1) used the term "incompetent person," but the same "non-substantive" statute that amended Section 352(a) altered this term to "a person who lacks legal capacity to make decisions." *See* Cal. Civ. Proc. Code § 372, *amended by* 2014 Cal. Stat. c. 144, § 5; Concurrence in Senate Amendments: A.B. 1847.

16-55926

not raise a triable issue. Even a person "adjudged mentally ill" *for commitment by a court* "may nevertheless be capable of transacting business and carrying out h[er] affairs." *Hsu*, 66 Cal. Rptr. at 665. And, the records do not otherwise do so. Rather, they list Ms. Stern's Alzheimer's as "stable," her neurological status as "alert," and her psychiatric status as "display[ing] a normal affect"; and they show that she could follow instructions and communicate needs. At most, the records indicate that Ms. Stern needed assistance with certain matters and was "occasionally" disoriented. But again, the standard is whether a person is "*incapable* of caring for [her] property," etc., not whether she can operate entirely *by herself*. *See Alcott*, 112 Cal. Rptr. 2d at 812 (emphasis added) (citations omitted). Thus, the 2007 records fail to establish that Ms. Stern *ever* lacked capacity, let alone that she did so several years later when her claims accrued.

Ms. Stern's deposition in her 2013 state suit likewise does not help plaintiffs' case. Ms. Stern testified that she was aware that she was bringing a lawsuit; that she attends to her finances with her son's help; that, since 2000, she has had "control" over her finances and "take[s] care of them when [she has] to"; and that, around 2010, she was capable of deciding whether to change rooms herself. Mr. Stern also represented on the record, as an officer of the court and Ms.

Stern's attorney, that Ms. Stern's "cognitive function is very high."[6]

The portion of Mr. Stern's declaration on which plaintiffs rely in support of their tolling argument similarly raises no issues of fact triable to a jury. The declaration states that Ms. Stern had dementia since at least 2006. But, again, the mere fact that a person is determined to have a mental illness or limitation, standing alone, does not establish incapacity. *See Hsu*, 66 Cal. Rptr. at 664–65.

Mr. Stern also avers in his declaration that: (1) "because of the problems with [Ms. Stern's] short term memory, she, from at least 2006 to her death, was unable to, by herself, take care of much of her affairs, including her business affairs"; and (2) Ms. Stern "would not remember days of the week, when to pay bills, what she would have done with bills had they been given to her, what she needed to remember in terms of problems with [her living facility] to communicate and try an [sic] resolve such, and a myriad of other matters that would have required her attention. As such, I had to do those for her." These statements cannot defeat summary judgment, however, for two reasons.

First, much in these statements is "blatantly contradicted by the record." *See*

---

[6] Plaintiffs indicate that Ms. Stern exhibited confusion during her deposition. A reading of the deposition reveals that Ms. Stern's confusion was attributable to her hearing impairment and the rather extensive interjection of comments and objections by her lawyer (who is her son) that made it difficult to follow the questioning. Even if the deposition *were* sufficient to raise a triable issue of incapacity, the deposition was held years after the claims accrued. Post-hoc incapacity cannot trigger tolling. *See* Cal. Civ. Proc. Code § 352(a); *Larsson*, 218 P.2d at 606.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that a court need not adopt a non-moving party's version of the facts if "blatantly contradicted by the record"). As noted above, the record shows that Ms. Stern had sufficient capacity to file a lawsuit in her own name in 2013. Furthermore, Mr. Stern was Ms. Stern's counsel in the state court action, and, despite the assertion in his declaration that Ms. Stern lacked capacity "from at least 2006 to her death," there is nothing in the record showing that Mr. Stern arranged to have a guardian appointed for Ms. Stern, as would have been required if she truly were incompetent. *See* Cal. Civ. Proc. Code § 372(a)(1); *see also* Cal. Civ. Proc. Code § 373(c) ("If the person lacking legal competence to make decisions is a party . . . [a guardian *ad litem* shall be appointed] upon the application of a relative or friend of the person . . . or of any other party . . . or by the court on its own motion.").[7] *Cf. In re Sara D.*, 104 Cal. Rptr. 2d 909, 918 (Ct. App. 2001) ("If, in [counsel's] opinion, [the party] did not understand the process or she was unable to assist him in protecting her interests [such that counsel believed that a guardian *ad litem* should be appointed], [counsel] had an obligation to bring the question of competency to the court's attention."); *In re Lisa M.*, 225 Cal. Rptr. 7, 9 (Ct. App. 1986). And, Mr. Stern represented on the

---

[7] This provision was also amended by the statute that amended Sections 352(a) and 372(a)(1) to change the phrase "an insane or incompetent person" to "the person lacking legal competence to make decisions." *See* Cal. Civ. Proc. Code § 373, *amended by* 2014 Cal. Stat. c. 144, § 6; Concurrence in Senate Amendments: A.B. 1847.

record in that case, during Ms. Stern's deposition (taken December 11, 2013), that Ms. Stern's "cognitive function is very high," which, as an officer of the state court and Ms. Stern's counsel, he could not have done if he actually thought that she lacked capacity at that time. Moreover, Ms. Stern testified, during that deposition, that, since 2000, she had been able to attend to her finances and that, around 2010, she could make decisions concerning her living arrangements. Finally, defendants point to a separate portion of Mr. Stern's declaration showing that Ms. Stern participated in a "joint decision" to move out of her facility in April 2010.

Second, these statements are "too vague, conclusory and speculative to create a triable issue." *See Angle v. Miller*, 673 F.3d 1122, 1134 (9th Cir. 2012); *see also id.* at 1134 n.6. The first is no more than a conclusory legal assertion (and an erroneous one at that). Furthermore, both are bereft of essential details as to her memory challenges, such as those concerning their frequency and severity. That absence is critical given that: (1) plaintiffs point to no other evidence that Ms. Stern lacked capacity at the time her claims accrued; (2) Mr. Stern also represented in his declaration that Ms. Stern "was relatively high functioning" and that her "ability to think and reason" "remained good"; and (3) the record otherwise shows that Ms. Stern often attended to her affairs during the period in question.

Plaintiffs' second argument, that the state suit tolled the claims, is without merit. As we have observed, "California courts have concluded that absent express

statutory language, a plaintiff's voluntary dismissal will not entitle him to toll the statute of limitations." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1127 (9th Cir. 2008). Ms. Stern's state suit was voluntarily dismissed, and therefore the limitations periods continued to run.

On this record, we conclude that the district court correctly granted summary judgment on the Rehabilitation Act, constructive eviction, and trespass claims.

**3.** We now turn to the dismissals under Rule 12(b)(6) of the state Elder Abuse Act claims in the Second Amended Complaint and of the state Unruh Act claims in the Third Amended Complaint. These dismissals were granted because the district court held that plaintiffs had failed plausibly to plead "recklessness, oppression, fraud, or malice" as required by the Elder Abuse Act and had not plausibly alleged an "independent ADA claim" or "intentional discrimination" as required by the Unruh Act.

The district court was likely correct on each score. But, we note that the voluminous complaints (130 and 57 pages, respectively) could be construed to supply the missing elements (although, like the district court, we could not find them). Nonetheless, in light of the analysis on summary judgment, we need not reach whether these dismissals were proper under Rule 12(b)(6). It is a "well established rule that we may affirm the district court's judgment on any basis supported by the record." *Zadrozny v. Bank of N.Y. Mellon*, 720 F.3d 1163, 1172

n.3 (9th Cir. 2013) (citations omitted).  Further, we may grant summary judgment *nostra sponte* in an appropriate case.  *See Nozzi v. Housing Auth. of L.A.*, 806 F.3d 1178, 1199 (9th Cir. 2015).  Here, we hold that summary judgment as to the Elder Abuse Act and Unruh Act claims should be granted on timeliness grounds and for the same reasons that summary judgment was affirmed as to plaintiffs' Rehabilitation Act, constructive eviction, and trespass claims.

As an initial matter, a *nostra sponte* grant of summary judgment by this Court is proper in this case.  For such action to be authorized, plaintiffs must be on "'reasonable notice that the sufficiency of [their] claim will be in issue' and [therefore have] 'adequate time to develop the facts on which [they would] depend to oppose summary judgment.'"  *See id.* (citations omitted); *see also Albino v. Baca*, 747 F.3d 1162, 1176–77 (9th Cir. 2014).  The only material factual questions respecting whether plaintiffs' Elder Abuse Act and Unruh Act claims are timely involve the accrual date and the applicability of tolling.  Precisely the same factual issues were resolved in the district court's order granting the motion for summary judgment as to plaintiffs' Rehabilitation Act, constructive eviction, and trespass claims.  Also, defendants argued the timeliness of plaintiffs' Elder Abuse Act and Unruh Act claims on appeal by asserting that tolling is inapplicable to these claims *for the same reasons it is inapplicable to the Rehabilitation Act, constructive eviction, and trespass claims*.  Plaintiffs therefore had reasonable

16-55926

notice and an adequate opportunity to develop facts and argument as to the relevant issues both below and before this Court. *See Nozzi*, 806 F.3d at 1199; *Albino*, 747 F.3d at 1177. Thus, we turn to plaintiffs' claims and analyze them under the same standards and based on the same evidence described in Part 2 above.

The Elder Abuse Act is governed by the two-year statute of limitations for personal injury actions. Cal. Civ. Proc. Code § 335.1; *Benun v. Superior Court*, 20 Cal. Rptr. 3d 26, 37 (Ct. App. 2004). Unruh Act suits that, as here, allege discrimination in public accommodations are likewise subject to this two-year period. *See* Cal. Civ. Proc. Code § 335.1; *Gatto v. Cty. of Sonoma*, 120 Cal. Rptr. 2d 550, 557, 560–61 (Ct. App. 2002). Again, it is undisputed that the latest date on which these claims could have accrued is April 30, 2010. Given that this action was filed on July 2, 2014, plaintiffs' claims are unquestionably time-barred on the face of the pleadings.

The claims could only be saved, therefore, if the statutes of limitations were tolled. As we previously held, however, there is no triable issue on this point. Thus, summary judgment is proper and, accordingly, we affirm the judgment of the district court as to these claims.

**4.** The remaining issues are plaintiffs' motions under Rule 60, their attempt to add an FHA claim in their brief in opposition to summary judgment, and their request that we treat their Unruh Act claims as claims under Title III of the ADA.

13                                                                    16-55926

Denial of a Rule 60 motion is reviewed for abuse of discretion, and "appeal from a denial of a Rule 60(b) motion brings up only the denial of the motion for review, not the merits of the underlying judgment." *Molloy v. Wilson*, 878 F.2d 313, 315 (9th Cir. 1989). Here, plaintiffs dispute *just* the underlying judgment. And, they do so only by way of a conclusory footnote stating that "[f]or the same reasons the Motions to Dismiss should not have been granted, the Rule 60 motions should have been granted." Consequently, any challenge to the district court's Rule 60 rulings is waived. *See Greenwood*, 28 F.3d at 977.

Denial of leave to amend under Rule 15(a)(2) is also subject to an abuse of discretion standard, and a district court "has 'wide discretion in granting or refusing leave to amend after the first amendment.'" *See Rich v. Shrader*, 823 F.3d 1205, 1208–09 (9th Cir. 2016) (citations omitted). Here, plaintiffs' opening brief fails to explain how the district court abused its discretion in refusing to allow the addition of an FHA claim at the summary judgment stage, nearly two years into the case, and after four complaints had been filed. Plaintiffs have therefore again waived review of the district court's decision. *See Greenwood*, 28 F.3d at 977.[8]

Finally, even if we were to treat plaintiffs' Unruh Act claims as claims under Title III of the ADA, we would, as with the Unruh Act claims, grant summary

---

[8] Plaintiffs' reply brief attempts to correct this deficiency, but "[w]e review only issues which are argued specifically and distinctly in a party's *opening* brief." *See Greenwood*, 28 F.3d at 977 (emphasis added).

judgment on statute of limitations grounds. We have not decided the limitations period for Title III claims, but the only *conceivable* options are California's two-year personal injury provision and its three-year period for "[a]n action upon a liability created by statute." *See* Cal. Civ. Proc. Code §§ 335.1, 338(a); *Sharkey*, 778 F.3d at 770–73; *Hartline v. Nat'l Univ.*, 2:14-cv-0635, 2015 WL 4716491, at *3–4 (E.D. Cal. Aug. 7, 2015), *adopted*, 2016 WL 426643 (E.D. Cal. Feb. 4, 2016). Neither renders plaintiffs' claims timely, and tolling is unavailable.

**AFFIRMED.**